UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Ray Scott L.,

                Plaintiff,

v.

Kilolo Kijakazi, Acting Commissioner of Social Security,

                Defendant.

Civil No. 3:23-CV-00070 (MPS)

November 17, 2023

**RECOMMENDED RULING ON PENDING MOTIONS**

Plaintiff, Ray L.[1], appeals the decision of the Commissioner of Social Security ("Commissioner" or "Defendant"), rejecting his application for Title II Disability Insurance Benefits ("DIB"). (ECF No. 1.) He moves the Court for an order reversing the Commissioner's decision and for an order remanding the case for a new hearing or for a calculation of benefits. (ECF Nos. 1, at 4, 15-1; ECF No. 24 (Reply Brief).) The Commissioner moves for an order affirming that decision. (ECF No. 21, ECF No. 30 (Sur-reply Brief).)

For the reasons detailed below, the Court recommends that Plaintiff's Motion to Reverse the Decision of the Commissioner [ECF No. 15] be **DENIED** and the Commissioner's Motion for an Order Affirming the Decision [ECF No. 21] be **GRANTED**.

---

[1]     Pursuant to D. Conn. Standing Order CTAO-21-01, Plaintiff will be identified solely by first name and last initial throughout this opinion.

1

I.      FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 2018, Plaintiff filed an application for DIB benefits under Title II. (R. 248.) He claimed that he could not work due to degenerative disc disease and osteoarthritis. (R. 19.) He alleged a disability onset date of November 14, 2014. (R. 16.) His applications were denied initially on January 8, 2019 (R. 16, 72-87), and upon reconsideration on June 25, 2020. (R. 16, 89-110.)

On January 25, 2022, the ALJ issued an unfavorable decision to Plaintiff. (R. 16-27.) The ALJs are required to follow a five-step sequential evaluation process in adjudicating Social Security claims and ALJ I.K. Harrington's written decision followed that format. At Step One, she found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019. (R. 19.) At Step Two, she found that Plaintiff suffers from the severe impairments of degenerative disc disease and osteoarthritis. (*Id.*) At Step Three, she concluded that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the "Listings" – that is, the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. 20.) She then determined that, notwithstanding his impairments, Plaintiff retained the residual functional capacity to:

> [P]erform light work[2] as defined in 20 CFR 404.1567(b) except: frequently balance and climb ramps/stairs; occasionally stoop, kneel, crouch, crawl, and climb

---

[2]      "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

Social Security Ruling 83-10 further explains:

> Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time. The lifting requirement for the majority

ladders/ropes/scaffolds; occasional overhead reaching with the bilateral upper extremities; frequent handling with the bilateral upper extremities; must avoid even moderate, exposure to vibration; wearing bilateral hearing aids; exposures to moderate noise intensity level (which is defined as business office with typewriters in use, department store, grocery store, light traffic, fast food restaurant at off-hours); wearing a compression sleeve/brace on the right knee.

(R. 20-21.) At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work (20 C.F.R. § 404.1565). (R. 25.) Finally, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including "furniture rental consultant", "tanning salon attendant", and "counter clerk". (R. 25-26.) Accordingly, the ALJ determined that Plaintiff was not disabled from April 22, 2019, the alleged onset date, through December 31, 2019, the date last insured.[3] (R. 27.)

## II. DISCUSSION

Plaintiff raises one argument on appeal. He argues that the ALJ erred at Step Five of the analysis because the VE's testimony was unreliable and thus, does not constitute substantial

---

of light jobs can be accomplished with occasional, rather than frequent, stooping. Many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk. They require use of arms and hands to grasp and to hold and turn objects, and they generally do not require use of the fingers for fine activities to the extent required in much sedentary work.

Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983).

[3] The relevant period under review for Plaintiff's DIB benefits runs from April 22, 2019, his amended alleged onset date through the date last insured December 31, 2019. 20 C.F.R. §§ 404.130, 404.315(a); *see Banyai v. Berryhill*, 767 F. App'x 176, 178 (2d Cir. 2019) (summary order), as amended (Apr. 30, 2019) ("To be entitled to disability insurance benefits, claimants must demonstrate that they became disabled while they met the Act's insured status requirements.") (citing 42 U.S.C. § 423(a)(1)(A), (c)(1)); *Solis v. Berryhill*, 692 F. App'x 46, 48 (2d Cir. 2017) (summary order) (finding the "relevant period" for establishing disability is the time between the alleged onset of disability and the date the claimant was last insured).

evidence.  (ECF No. 15-1, at 10-21.)  The Commissioner disagrees and argues that the ALJ did not commit legal error and substantial evidence supports her conclusions.  (ECF No. 21.)

For the reasons that follow, the Court concludes that the ALJ did not err as a matter of law and her decision was supported by substantial evidence.

### 1. Step Five Challenge

Plaintiff argues that the VE's testimony is unreliable because the ALJ failed to "inquire of the vocational expert as to the basis for or source of the VE's testimony regarding the job incidence numbers" and the VE did not "testify as to the basis of or source for her testimony on the job incidence numbers."  (ECF No. 15-1, at 12.)  The Commissioner argues that the ALJ properly relied on the VE's testimony.  (ECF No. 21-1, at 5-10.)

Plaintiff contends that—even in the absence of any challenge or inquiry of the vocational expert about what sources the expert consulted—the substantial evidence standard is not satisfied as a matter of law if an ALJ relies on job-numbers data from a vocational expert who does not state what source or sources she relied on to arrive at these job incidence numbers.  The Court disagrees.

At Step Five, the Commissioner must determine whether significant numbers of jobs exist in the national economy that the plaintiff can perform.  *See* 20 C.F.R. §§ 404.1512(b)(3); 404.1520(a)(4)(v).  To satisfy this burden, an "ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based [the] opinion," and the hypotheticals "accurately reflect the limitations and capabilities of the claimant involved."  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (internal quotation marks and citations omitted).  In *McIntyre*, the Second Circuit held that "a vocational expert is not required to identify with specificity the figures or sources

4

supporting his conclusion, at least where he identified the sources generally." *Id.* at 152. In that case, the vocational expert "was not required to articulate a more specific basis for his opinion" where "the ALJ reasonably credited this testimony, which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record." *Id.*

Plaintiff argues that "[a]t no time during the hearing did the ALJ inquire of the vocational expert as to the basis for or source of the VE's testimony regarding the job incidence numbers" and the VE did not "testify as to the basis of or source for her testimony regarding the numbers of jobs." (ECF No. 15-1, at 12.) However, the Supreme Court's decision in *Biestek v. Berryhill*, 139 S. Ct. 1148 (2019) undermines Plaintiff's argument. In *Biestek* the Supreme Court addressed the issue whether a VE's failure to provide scientific data supporting his or her conclusion as to the number of jobs available in the national economy precludes a finding of substantial evidence for an ALJ's conclusion. *Id.*, at 1157. The Court noted that, "[t]he inquiry, as is usually true in determining the substantiality of evidence, is case-by-case. It takes into account all features of the vocational expert's testimony, as well as the rest of the administrative record." *Id*. While the absence of scientific data may or may not affect the credibility of the expert's testimony, the analysis "defers to the presiding ALJ, who has seen the hearing up close." *Id*. "The vocational expert's credentials, history of testimony, her ability to answer the ALJ and attorney's questions, and the alleged basis for her testimony are all relevant in providing substantial evidence for her opinion." *Keovilay v. Berryhill*, No. 3:19-CV-0735 (RAR), 2020 WL 3989567, at *9 (D. Conn. July 15, 2020) (citing *Biestek*, 139 S. Ct. at 1155). Stated differently, "[a]ssuming no demand [for data supporting the testimony], a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek*, 139 S. Ct. at 1155. Following *Biestek*

and *McIntyre*, courts in this District recognize that if "the substantial evidence requirement does not categorically require a vocational expert to disclose her job-numbers data, even when specifically requested, neither does it require a vocational expert to disclose the general source of her jobs-number data in the absence of any request." *Crespo v. Comm'r of Soc. Sec.,* No. 3:18-CV-00435 (JAM), 2019 WL 4686763, at *9 (D. Conn. Sept. 25, 2019); *see Stonick v. Saul*, No. 3:19-CV-01334 (TOF), 2020 WL 6129339, at *17–18 (D. Conn. Oct. 19, 2020); *Stacey M. F. v. Kijakazi*, No. 3:20-CV-01910 (VAB), 2022 WL 970092, at *21 (D. Conn. Mar. 31, 2022) (cases since *Biestek* "have interpreted that Supreme Court decision as supporting the conclusion that a vocational expert's failure to identify their sources does not preclude the existence of substantial evidence for an ALJ's conclusion."); *see* Def. Brief, ECF No. 21-1, at 8 (collecting cases).

Plaintiff has not demonstrated that the ALJ's RFC determination is not supported by substantial evidence or that the VE's testimony was in error. Here, the VE's testimony "has sufficient indicia of reliability to support a conclusion about whether [claimant] could find work." *Biestek*, 139 S. Ct. at 1157.

First, the vocational expert, Sakinah Malik, M.Ed. has significant experience as a rehabilitation counselor. (R. 327-28.) Her experience includes understanding "the use of the DOT and its companion publications to interpret the essential functions of the jobs, within the disabled person's ability to perform, based on the RFC"; "[t]ransferable skills analysis"; "[d]iscussions with employers, real time job analysis, evaluations, research jobs online in employment search engines and determine job(jobs) identified in the DOT still exist/viable in the national economy"; and "[t]he use of Department of Labor Market Statistical data, trends to identify employment in the local state, and national economy." *Id.* Plaintiff did not challenge her credentials, professional qualifications, or experience. (R. 56); *Biestek*, 139 S. Ct. at 1155.

Second, the VE answered the questions asked by the ALJ and the claimant's representative directly and clearly. (R. 57-70); *Biestek*, 139 S. Ct. at 1155. In her RFC determination, the ALJ found Plaintiff capable of performing less than the full range of light work. (R. 20.) At the hearing, the ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, and work experience. The VE testified that the individual could perform light work with frequent balancing; climb ramps stairs; and occasionally stoop, kneel, crouch, crawl, and climb ladders/ropes/scaffolds. (R. 61.) Additionally, the individual could occasionally perform overhead reaching with his bilateral upper extremities, and frequently handle with his bilateral upper extremities and wear bilateral hearing aids and a compression sleeve brace on the right knee. (R. 61-62.) The VE confirmed that the individual could not perform Plaintiff's past work, but could perform other light exertional jobs. (R. 62.) The VE then identified three occupations, furniture rental consultant, tanning salon attendant, and counter clerk, that are considered light work with occasional overhead reaching.[4] (R. 62-63.) The VE noted that the DOT did not distinguish between overhead reaching and other types of reaching, and therefore, none of the jobs she identified required more than occasional reaching. (R. 63.) The ALJ asked the VE whether the jobs were consistent with the DOT and SCO (*Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupation Titles*). (*Id.*) The VE confirmed that they are. (*Id.*) The ALJ then asked the VE if the DOT and SCO discussed whether certain jobs allow an individual to wear bilateral hearing aids or a compression sleeve brace, and the VE stated they do not "address

---

[4]  The VE testified to the following job incidence numbers: "So, I have the furniture rental consultant and that is #295.357-018. Exertional level light, SVP of 2 and that is 7,670. The tanning salon attendant, #359.567-014, exertional level, light with a SVP of 2 and that's 1,480. The counter clerk, #249.366-010, exertional level light, with a SVP of 2, and that's 1,730." (R. 63.)

all of the issues." (*Id.*) She explained that her answer was based on her experience and observation of these jobs." (R. 64.)

The ALJ afforded Plaintiff's representative an opportunity to examine the vocational expert, and the representative did so but did not challenge the vocational expert's testimony about job numbers or ask the vocational expert for the source of the job numbers. (R. 65-68.) Plaintiff's representative had the chance to ask questions until she ultimately told the ALJ, "I have no further questions." (R. 68.) Nor did the representative challenge the qualifications of the expert, who submitted a resume. (R. 56, 327-328.)

As set forth in *Crespo*, "the substantial evidence standard does not foreclose an ALJ from relying on the expertise of a vocational expert and to do so without requiring the expert to lay a further foundation about the sources that the expert has consulted in order to arrive at the expert's job-number information." *Crespo,* 2019 WL 4686763, at *9 (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A [vocational expert]'s recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required.")).

The Court joins the other courts in this district and adopts a case-by-case approach to conclude that the ALJ properly relied on the testimony of the vocational expert. *See id.* ("If the substantial evidence requirement does not categorically require a vocational expert to disclose her job-numbers data, even when specifically requested, neither does it require a vocational expert to disclose the general source of her jobs-number data *in the absence of any request.*") (emphasis added); *Jones v. Saul*, No. 3:20-CV-00963-SDV, 2021 WL 4059712, at *7 (D. Conn. Sept. 7, 2021) ("The ALJ could reasonably conclude that the VE's extensive professional experience meets the low evidentiary bar set forth by *Biestek* and substantial evidence review."); *Keovilay,* 2020 WL 3989567, at *9 (citing *Crespo* to find that the VE's "failure to provide a source for the number of

8

jobs in the economy does not dispel the existence of substantial evidence."); *Stacey M. F.*, 2022 WL 970092, at *21 (citing decisions in *Crespo,* and *Stonick* interpreting the decision [in *Biestek*] *"*as supporting the conclusion that a vocational expert's failure to identify their sources does not preclude the existence of substantial evidence for an ALJ's conclusion.").

Accordingly, the Court finds that there was no error at step five and the VE's failure to identify the sources of her job-incidence data does not require a reversal of the ALJ's decision.

Plaintiff also challenges the VE's testimony regarding his past relevant work. (ECF No. 15-1, at 20-21; R. 58-59.) Defendant argues, and the Court agrees, that the exchange is immaterial to the result in this case, because the ALJ found that Plaintiff could not return to his past relevant work, and proceeded to step five of the sequential evaluation. (ECF No. 21-1, at 9.)

Finally, Plaintiff challenges the VE's testimony because the ALJ "repeatedly" "asked the VE for the source of her testimony regarding matters not covered by the DOT and SOC" and that "the ALJ had to suggest possible answers." (ECF No. 15-1, at 21.) Plaintiff argues that a follow-up question is somehow improper and is error. The Court disagrees and notes that Plaintiff's counsel also asked follow-up questions during the hearing. (R. 65-68.) The Court has carefully reviewed the hearing testimony and finds no error, nor has Plaintiff provided any case law to support his claim that the exchange at issue during the hearing was error.

The ALJ reasonably relied on the VE's testimony which was based on her expert "professional experience and judgment and which is not undermined by the record." *Stacey M. F.,* 2022 WL 970092, at *21 (finding that, "consistent with the Second Circuit's *McIntyre* opinion, "'the ALJ reasonably credited [the VE's testimony], which was given on the basis of the expert's professional experience and clinical judgment, and which was not undermined by any evidence in the record.'") (quoting *McIntyre*, 758 F.3d at 152. (R. 65-68.)

9

### III.     CONCLUSION

Based on the foregoing, the Court finds that the ALJ did not err as a matter of law and her decision was supported by substantial evidence.  As such, the Court recommends that Plaintiff's Motion for Order Reversing the Commissioner's Decision **[ECF No. 15]** be **DENIED** and Defendant's Motion for an Order Affirming the Decision of the Commissioner **[ECF No. 21]** be **GRANTED**.  The Court recommends that judgment enter in favor of Defendant.

This is a recommended ruling by a magistrate judge. *See* Fed. R. Civ. P. 72(b)(1). Any objections to this recommended ruling must be filed with the Clerk of the Court within fourteen days of being served with this order. *See* Fed. R. Civ. P. 72(b)(2).  Failure to object within fourteen days will preclude appellate review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; D. Conn. L. Civ. R. 72.2(a); *Impala v. United States Dep't of Justice*, 670 F. App'x 32 (2d Cir. 2016) (summary order) (failure to file timely objection to magistrate judge's recommended ruling precluded further appeal to Second Circuit); *Small v. Secretary of H.H.S.*, 892 F.2d 15 (2d Cir. 1989) (per curiam).

Hon. Maria E. Garcia<br>
United States Magistrate Judge